**Edward RISEMAN et al., Plaintiffs, Appellants,**

v.

**SCHOOL COMMITTEE OF the CITY OF QUINCY et al., Defendants, Appellees.**

**No. 7715.**

United States Court of Appeals, First Circuit.

March 11, 1971.

Michael L. Altman, Dorchester, Mass., with whom Carolyn Peck, Cambridge, Mass., was on brief, for appellants.

John W. Sharry, Asst. City Sol., for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

Plaintiff, a junior high school student in Quincy, Massachusetts, after being prevented by school officials from distributing within the school an anti-war leaflet and "A High School Bill of Rights", sought permission from the School Committee to distribute on school property and during school hours, literature of a political nature such as leaflets relating to the country's involvement in Southeast Asia. The Committee voted to deny plaintiff's request. The denial was not based on the nature of the materials sought to be distributed, but on a refusal to change the existing School Committee regulation, reproduced in the margin,[1] which the Committee believed covered this situation.

1. "Pupils, staff members, or the facilities of the school may not be used in any manner for advertising or promoting the interests of any community or non-school agency or organization without the approval of the School Committee. Exceptions to the above rule are:

    a. The Superintendent of Schools may cooperate in the many activities of the community providing such operation does not infringe on the school program or diminish the amount of time devoted to the school program.

**149**

Plaintiff thereafter brought an action in the district court under 42 U.S.C. § 1983, seeking injunctive and declaratory relief. Subsequently hearing was held on plaintiff's motion for a preliminary injunction. The court denied plaintiff's request but temporarily restrained defendant from "interfering with the orderly and not substantially disruptive distribution on school premises *outside* of school buildings" (emphasis added) of materials of a political nature or of other matters of public concern. Protesting that "outside of school buildings" was less than half a loaf, plaintiff appealed, asserting insufficient preliminary relief, and also sought a broadening of the interlocutory relief pending appeal which we granted on November 3, 1970.[2]

Considering the action of the district court, after notice and a full scale hearing, to be an appealable order, ITT Lamp Division of ITT v. Minter, 435 F. 2d 989, n. 2 (1st Cir. Dec. 14, 1970), we face the task, regrettably no longer novel, of securing the exercise of First Amendment rights of students against unrestricted encroachment by school authorities. While we have recently been called upon only to deal with First Amendment activities of teachers, *see, e.g.*, Mailloux v. Kiley, 436 F.2d 565 (1st Cir. Jan. 14, 1971), and Keefe v. Geanakos, 418 F.2d 359 (1st Cir. 1969), other courts have applied the principles of

Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) to the right of high school students to distribute literature within their schools. Scoville v. Board of Education of Joliet, 425 F.2d 10 (7th Cir. 1970); Eisner v. Stamford Board of Education, 314 F.Supp. 832 (D.Conn.1970); Sullivan v. Houston Independent School District, 307 F.Supp. 1328 (S.D.Tex.1969); Zucker v. Panitz, 299 F.Supp. 102 (S.D.N.Y.1969); *cf.* Friedman v. Union Free School District, 314 F.Supp. 223 (E.D.N.Y.1970).

We recognize the duty of school authorities to punish student conduct which "materially disrupts classwork or involves substantial disorder or invasion of the rights of others", *Tinker, supra,* 393 U.S. at 513, 89 S.Ct. at 740. However, we find it unlikely that a court, on completion of this case on the merits, could uphold this attempt at regulating student conduct. First, the rule was obviously devised for the quite different purposes of controlling in-school advertising or promotional efforts of organizations. More importantly, as sought to be applied to First Amendment activities, it is vague, Connally v General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), overbroad, Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and does not reflect any effort to miminize the adverse effect of prior restraint,

b. The Superintendent of Schools may authorize the use of films and materials or programs where the educational value of the material considerably offsets any incidental advertising disadvantages.

c. Appropriate advertising may be sold for the school publications."

2. The pertinent terms of our order required:

"Pending final determination of this case, or until further order of this court, the Quincy public schools shall not enforce a regulation prohibiting absolutely the distribution on the school grounds, which includes within the buildings, by students of leaflets, brochures, or other written forms of expression. Students shall have the right to engage in orderly and not

substantially disruptive distribution of such papers, provided that neither the distributors nor the distributees are then engaged, or supposed to be engaged, in classes, study periods, or other school duties. Nothing in this order shall prevent the principal of any school from promulgating reasonable rules setting forth in detail the times, places within that school, and manner that such matter may be distributed, provided that no advance approval shall be required of the content of any such paper. However, the principal may require that no paper be distributed unless, at the time that the distribution commences, a copy thereof, with notice of where it is being and/or is to be distributed, be furnished him, in hand if possible."

Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

In our earlier order broadening the scope of injunctive relief pending appeal, we attempted to make clear the right of the school officials to devise sensible rules governing the time, place, and manner of distribution of literature. We do not intend that the continuance of injunctive relief pending final disposition of this case should delay the devising of such guidelines.

Reversed, remanded for amending the order granting temporary injunctive relief to make the same consistent with our order of November 3, 1970.