MAPCO, INC. *v.* Linda PAYNE

90-214                                              812 S.W.2d 483

Supreme Court of Arkansas
Opinion delivered July 1, 1991
[Rehearing denied September 16, 1991.*]

---

* Hays, J., would grant rehearing.

*Penix, Penix & Lusby,* by: *Bill Penix,* for appellant.

*Keith Blackman,* for appellee.

DONALD L. CORBIN, Justice. Appellee, Linda Payne, filed suit against appellant, Mapco, Inc., her former employer. Appellee alleged in her complaint that appellant violated the provisions of Ark. Code Ann. § 11-9-107 (1987) by refusing to reemploy her when she completed her convalescence from knee surgery for a work-related injury. She alleged this was retaliatory conduct in violation of the public policy of the State of Arkansas. The jury awarded appellee a $15,000 verdict. Appellant challenges the verdict, claiming there was insufficient evidence for submission of the case to the jury and that unemployment benefits should have been deducted from the $15,000 award. We affirm.

In 1983, appellant employed appellee as a clerk at a Mapco convenience store and gasoline station in Trumann, Arkansas. She received a job-related injury to her knee on August 25, 1986. She did not work that week or a large part of the following week. She returned to work full-time on September 1, 1986. She testified that although her knee continued to bother her, she continued to work for eight or nine months. She testified that the company gave her permission to see Dr. Ball, who performed surgery on her knee on August 7, 1987. She filed workers' compensation claims relating to this knee injury.

Appellee testified about her attempts to return to work following her surgery. She said she went to the Mapco store on

more than one occasion to talk to Brenda Davis and J.B. Broadway, her immediate supervisors, about returning to work. She said they ignored her. She also stated that in October 1987 when she went to the store, she received a note from Mr. Broadway telling her to turn in her uniforms. On December 26, 1987, she went back to the store to submit a doctor's release, at which time Mr. Broadway gave it back to her, saying, "I don't need this." When she called back on December 28, 1987, to tell Mr. Broadway she would be available to work on January 4, 1988, Ms. Davis told her, "We still don't need you."

The evidence reveals that at least five other people were either hired or fired, or quit from December 1, 1987 to May 29, 1989. Cheryl Covey, a co-employee, testified that J.B. Broadway and Brenda Davis ignored appellee. She said they went into the office, shut the door, and told appellee they were too busy to talk to her. They also avoided appellee's telephone calls. She overheard Mr. Broadway and Ms. Davis saying they were going to have to do something with appellee because "she was going to cause the company grief." Mr. Broadway and Ms. Davis instructed Ms. Corey not to talk about appellee.

In its brief, appellant states the first point of this appeal as follows:

> If this case is affirmed, the law of Arkansas will be that failure to reemploy a worker after an injury, for whatever reason, constitutes evidence of discrimination sufficient to sustain a jury verdict for damages.

In support of this claim, appellant argues there was insufficient evidence of discrimination to submit the case to the jury. Appellant also argues that the public policy exception to our employment-at-will doctrine should not be extended to apply to this case. We disagree.

Section 11-9-107 states:

> Any employer who willfully discriminates in regard to the hiring or tenure of work or any term or condition of work of any individual on account of his claiming benefits under this chapter or who in any manner obstructs or impedes the filing of claims for benefits under this chapter shall be guilty of a misdemeanor and on conviction shall be

punished by a fine of not to exceed one hundred ($100) dollars, or by imprisonment of or not to exceed six (6) months, or by both fine and imprisonment.

True enough, this statute is basically penal in nature and the remedy it provides is pursuable through administrative action before the Workers' Compensation Commission. However, we take the view that this remedy is not exclusive. This statutory provision is the clearest announcement by our legislature of a strong public policy that condemns retaliatory conduct by an employer who refuses to reemploy an employee for exercising a statutorily confirmed right to compensation for job-related injuries. Such conduct by an employer gives rise to an exception to our employment-at-will doctrine. *See Sterling Drug, Inc* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). Thus, appellant could properly bring this action for damages for the retaliation. *See Wal-Mart Stores, Inc,* v. *Baysinger*, 306 Ark. 239, 806 S.W.2d 385 (1991).

Necessarily, the burden of proving a retaliatory discharge is properly placed upon the employee. *See* 2A A. Larson, *The Law of Workmen's Compensation*, § 68.36(c) (1990). Here, appellee had the burden of proving that she was not rehired in violation of the public policy of this state, namely the policy stated in section 11-9-107. The prima facie case should be made by a showing that the workers' compensation claim was a cause for the retaliation. This may be proved, as in most any other action, by circumstantial evidence. As Professor Larson points out in his treatise, ordinarily the prima facie case must, in the nature of things, be shown by circumstantial evidence, since the employer is not apt to announce retaliation as his motive. Larson further elaborated that proximity in time between the claim and the firing is a typical beginning-point, coupled with evidence of satisfactory work performance and supervisory evaluations. *Id.* Once the employee has made a prima facie case of retaliatory discharge, the burden shifts to the employer to raise a defense of non-retaliatory reasons for the discharge. *See* 2A A. Larson,*The Law of Workmen's Compensation*, § 68.36(d) (1990).

Clearly, appellee presented sufficient facts to justify the court in letting the case go to the jury. Appellee presented evidence of a job-related injury. She also presented evidence that,

following the filing of her workers' compensation claim and convalenscence from surgery to treat a job-related injury, her supervisors ignored her and avoided any attempt she made to communicate with them regarding her claim or reemployment. Mr. Broadway and Ms. Davis admitted they were mad at her for allowing the doctor to schedule surgery so as to interrupt Ms. Davis' vacation plans. They also were overheard stating that appellee could cause the company grief. Finally, it was established that there were vacancies at appellee's previous place of work. There were no averments that appellee had been anything but an exemplary employee since 1983.

Following the presentation of the foregoing evidence, appellant offered very little evidence of non-retaliatory reasons for the refusal to re-hire appellee. The evidence that was offered was contradicted by appellee's evidence. There was substantial evidence to support the jury verdict.

As its second claim in this appeal, appellant argues that the $2,418.00 unemployment benefits paid by the State of Arkansas to appellee should not be classified as a collateral source and should be deducted from the judgment.

In *Green Forest Public Schools* v. *Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985), a case of first impression in Arkansas, this court noted that the Federal District Court in *Collins* v. *Robinson*, 568 F. Supp. 1464 (E.D. Ark, 1983), *aff'd per curiam*, 734 F.2d 1321 (8th Cir. 1984), had adopted the proposition that unemployment compensation benefits are considered a collateral source in tort cases. The *Green Forest* court adopted the same rule in employment cases. We refuse to reverse ourselves in this regard and reaffirm our position thus announced in *Green Forest, supra.*

Affirmed.

HAYS and BROWN, JJ., dissent.

STEELE HAYS, Justice, dissenting. I respectfully dissent for the reasons stated in Judge Brown's dissenting opinion, in which I join, and for the reason stated in a dissent to the majority opinion in *Wal-Mart* v. *Baysinger*, also issued today.

ROBERT L. BROWN, Justice, dissenting. Like the majority, I

agree that our cases recognize a public policy exception to the employment-at-will doctrine and that the exception extends (and should extend) to cases where employees are terminated because they have filed a workers' compensation claim. This policy has been codified by the General Assembly and is clear. *See* Ark. Code Ann. § 11-9-107 (1987). The public policy exception, however, should not extend to the facts of this case, where no intent or motive by the employer to violate that public policy was shown. Under such facts the trial court was remiss in not directing a verdict for the appellant.

All that was presented by Linda Payne in the way of proof was that she was ignored by the cashier, Brenda Davis, and the manager, J.B. Broadway, when she returned to work after her operation and that she was not rehired. There was also vague testimony from an employee who had been fired by Brenda Davis that she heard Davis and Broadway say that Payne "was going to cause the company grief." On the other hand Davis and Broadway testified that Payne had been back at work for almost a year since hurting her knee when she scheduled her operation. The operation was scheduled immediately after she returned from vacation and was in conflict with Davis's own vacation which had to be cancelled. Davis and Broadway admitted that they were angry at Payne for doing this. They denied that filing the worker's compensation claim itself had anything to do with the refusal to rehire.

Admittedly, proving motive and intent in these cases is difficult. Yet, something more must be shown in the way of circumstantial evidence beyond the mere filing of a worker's compensation claim and a subsequent refusal to rehire. Nonetheless, that is really all that was shown by Payne in this case. Here, Broadway had valid reasons for not taking Payne back: interference with Davis's vacation, prolonged telephone conversations, and customer complaints. On the other hand, the evidence at trial that filing the worker's compensation claim was the real reason for not rehiring was highly speculative. The majority cites proof that Payne was ignored by Davis and Broadway. Both individuals conceded that they were angry at Payne for other reasons. Rude treatment and vague statements to a fired employee are not sufficient in my judgment to find a public policy violation.

Reversing a jury verdict should be done with caution, and I espouse such a course reluctantly. But for us to uphold a jury verdict, the evidence must be substantial. *See Wal-Mart Stores v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991). In this case, the evidence presented was far from substantial but was sufficient only to raise suspicion and conjecture. I have no other choice but to dissent.

HAYS, J., joins.